IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRIAN K. CROSS.                                                                PLAINTIFF

                v.                                Civil No. 14-2054

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Brian Cross, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**  **Procedural Background:**

Plaintiff filed his applications for DIB and SSI on October 12, 2010, alleging an onset date of August 20, 2010, due to chronic obstructive pulmonary disease ("COPD"), sleep apnea, hernias, chronic pain in left testicle, chronic pain in left leg, irritable bowel syndrome ("IBS"), depression, high blood pressure, bacteria in prostate, heart problems, low testosterone, gastroesophageal reflux disease ("GERD"), hiatal hernia, gastritis, bile reflux, duodenitis, internal hemorrhoids, and colon polyps. Tr. 12, 139-151, 178, 193. The Commissioner denied his application initially and on reconsideration. Tr. 70-76, 79-87, 89-94. At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on September 25, 2012. Tr. 33-69. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 45 years old and possessed a high school education and vocational/technical training in heating/air conditioning. Tr. 26, 38, 40, 179, 193. He had past relevant work ("PRW") experience as an automobile part delivery driver and factory tagger. Tr. 26, 59, 166-176, 196-203.

On October 31, 2012, the ALJ concluded that the Plaintiff's GERD, IBS, status post bilateral inguinal hernia repair, status post left rotator cuff repair, chronic enterococcal epididymitis, testosterone deficiency, hypertension, obstructive sleep apnea, COPD, and depression were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 12-14. He concluded that the Plaintiff could perform light work with a sit/stand option allowing a change in position every 30 minutes and involving routine and repetitive tasks and frequent interaction with supervisors and co-workers. Tr. 17. The ALJ further limited the Plaintiff to occasional overhead reaching bilaterally, no climbing of ladder or scaffolds, no crawling, and no exposure to temperature extremes. Tr. 17. With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as an office helper, information clerk, and call out operator. Tr. 26-27.

The Appeals Council denied the Plaintiff's request for review on January 23, 2014. Tr. 1-8. Subsequently, Plaintiff filed this action. ECF No. 1. This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 14, 15.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). The fact finder considers the Plaintiff's age, education, and work experience in light of his or her residual functional capacity, only if he reaches the final stage. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The ALJ's RFC determination is of great concern to the undersigned. The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ cannot make medical judgments regarding the ability or disability of a claimant to engage in gainful activity, and the clinical findings must support any inferences he makes. *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982).

The Plaintiff suffers from a variety of impairments including chronic enterococcal epididymitis[1], chronic prostatitis[2], the residuals of a torn left rotator cuff status post surgical repair, and chronic pain in the back, left leg, and left knee. In the early 1990's, the Plaintiff developed testicular pain resulting in bilateral inguinal hernia repair in 1993. The pain returned in July 2001, at which time his urologist diagnosed him with epididymitis. Following treatment via antibiotics, his symptoms persisted. In September 2001, the Plaintiff underwent the removal of a left

---

[1] Epididymitis is an inflammation of the coiled tube at the back of the testicle that stores and carries sperm.  *See* Mayo Foundation for Medical Education and Research, Epididymitis, http://www.mayoclinic.org/diseases-conditions/epididymitis/basics/definition/con-20032876 (last accessed March 10, 2015). Bacterial infection is the most common cause of epididymitis.  *Id.*

[2] Prostatitis is swelling and inflammation of the prostate gland making it difficult and painful to urinate. Mayo Foundation for Medical Education and Research, *Prostatitis*, http://www.mayoclinic.org/diseases-conditions/prostatitis/basics/definition/con-20020916 (last accessed March 11, 2015). Additional symptoms include pain in the groin, pelvic area or genitals, and flu-like symptoms.

4

hydrocele[3] via laparoscopy.  He subsequently developed pain in the scrotal area, and a second laparoscopy found that fatty tissue had fallen into the scrotal sac.  The surgeon removed the tissue, but the Plaintiff developed increasing pain and chronic prostatitis.

Doctors later discovered he had contracted a Methacillin-Resistant Staphylococcus Areus infection following his hernia surgery, and performed open surgery of the left lower quadrant and left groin area to excise the dead tissue.  Unfortunately, his testicular and groin pain continued and he began experiencing abdominal pain, abdominal burning, and severe diarrhea for which he underwent a colonoscopy and removal of a polyp.  Records also reveal that he suffered from chronic Salmonella infections in his left testicle, chronic prostatitis, an infection of the seminal vesicles, chronic orchiodynia or testicular pain, epididymitis, left lower quadrant abdominal pain, and gastrointestinal issues.  In 2002, doctors at the Mayo Clinic diagnosed him with irritable bowel syndrome ("IBS"), chronic testicular pain, microscopic hematuria, pelvic pain, and abdominal pain.  Tr. 762-771.  Later that year, Dr. Gil Johnson determined that pain management was his only remaining option and made said referral.  Tr. 1054.

The Plaintiff's symptoms have persisted with recurrent infections of the prostate, testicle, and epididymis causing continued pain and limitation.  More recently, doctors have added low testosterone or hypogonadism and Vitamin B12 deficiency to the list of diagnoses resulting from his 1993 hernia repair.  The Plaintiff has routinely followed up with infectious disease doctors and pain specialists, receiving maintenance prescriptions for medications to include high power antibiotics, Methadone, Oxycodone, Bentyl, Testosterone, and Vitamin B12.  At times, intravenous antibiotics and steroids have also been necessary.

---

[3] A hydrocele is a collection of fluid inside the area of the scrotum.  *See*   Mayo Foundation for Medical Education and Research, *Hydrocele*, http://www.mayoclinic.org/diseases-conditions/hydrocele/basics/causes/con-20024139 (last accessed March 11, 2015).  Common causes include injury and inflammation or infections of the epididymis and/or testicles.  *Id*.

In late 2005, the Plaintiff suffered a full thickness rotator cuff tear involving the suprapinatus tendon. Tr. 323. He underwent surgery to correct this defect in early 2006. Tr. 642. However, the Plaintiff has continued to experience some pain associated with the use of his right arm. Tr. 333. It makes sense that the Plaintiff should be limited with regard to the use of this arm for reaching and related activities, to prevent reinjuring the rotator cuff.

On April 13, 2011, Plaintiff's treating physician of four years, Dr. W. A. Willis, completed a medical source statement. Tr. 527-528. Dr. Willis opined that the Plaintiff could sit for 1 hour at a time for a total of 2 to 3 hours per 8-hour workday; stand for 30 to 45 minutes for a total of 1 to 2 hours; and walk 5 to 10 minutes for a total of 30 minutes. Further, he indicated the Plaintiff would not be able to push and pull with his left hand; fine manipulate with either hand; work near unprotected heights or moving machinery; be exposed to marked temperature changes, dust, fumes, or gases; or, drive automotive equipment. Dr. Willis also found the Plaintiff would need to elevate his feet periodically, and would miss more than four days of work per month due to his impairments and/or treatment.

This same date, Dr. Willis completed an application for a five year handicapped parking placard on the Plaintiff's behalf. Tr. 529. He indicated the Plaintiff could not walk 200 feet without stopping to rest and was severely limited in his ability to walk due to an arthritic, neurological, or orthopedic condition.

Recent treatment notes from Dr. Louis Sasser at the Van Buren Family Clinic bolster Dr. Willis' assessment. *See* 20 C.F.R. § 404.1527(d)(2) (treating physician's medical opinion is given controlling weight if that opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record). Dr. Sasser began treating the Plaintiff for chronic pain in the left knee and leg, left testicle, and

lower back; epididymitis; depression; and, sleep apnea in 2010. Tr. 286, 509, 511-518, 674-680, 683, 689-691, 1209, 1212-1225. Exams have consistently revealed tenderness in the lumbar spine, left knee, and left leg with pain on motion in the aforementioned areas, left side abdominal tenderness, and tenderness in the groin. Further, the Plaintiff routinely reports that movement and exertion aggravate his chronic pain. Dr. Sasser has prescribed both Oxycodone and Methadone to treat the Plaintiff's pain, but the Plaintiff reports these medications do not alleviate all of his symptoms. Dr. Sasser has also prescribed testosterone and B12 injections.

The ALJ dismissed Dr. Willis' assessment, stating the medical documentation did not support it. He also depreciated the Plaintiff's allegations of pain, citing only conservative treatment for his pain, and improvement while on antibiotics. However, we can find no evidence to suggest that the Plaintiff was noncompliant with any of the treatment prescribed to treat his pain or that additional treatment options were available to him. *Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999). The records make clear that the Plaintiff's condition is one of a chronic nature for which the only treatment available is pain management and antibiotic therapy.

We also note that the Plaintiff's treating physicians have consistently prescribed Oxycodone and Methadone, both of which are narcotic analgesics prescribed to treat severe pain. Further, his doctors have consistently documented the Plaintiff's compliance with treatment, noting that he takes his medications only as prescribed. The doctors have voiced no concerns regarding the possibility of drug seeking behavior, and treatment notes reveal continued tenderness and pain in the testicle, left lower extremity, and left lower abdominal area.

The ALJ also dismissed the Plaintiff's allegations of medication side effects, finding no support for them in the record. However, a review of Dr. Willis' limitations concerning heights, work near moving machinery, and work involving the operation of a motor vehicle suggests that

7

he also had concerns. At the very least, the ALJ should have contacted him for further explanation. *See 20* C.F.R. § 416.912(e) (treating physicians or psychologists will be recontacted by the Commissioner when the medical evidence received from them is inadequate to determine a claimant's disability). Accordingly, we find that remand is necessary to allow the ALJ to reconsider the medical evidence documenting the Plaintiff's pain, Dr. Willis' medical statement, and the potential side effects of the medications prescribed to treat said pain. *See Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (ALJ is required to consider the dosage, effectiveness and side effects of the Plaintiff's medications).

On remand, the ALJ should be directed to recontact Dr. Willis to resolve his concerns regarding the basis of the doctor's medical source statement. Further, he should also be ordered obtain an RFC assessment from Dr. Sasser to fully develop the record with regard to the Plaintiff's ability to perform work-related activities.

### IV.   Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of March, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE